**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Nicholas Malchow,

Plaintiff,

v.

Civil No. 01-1662 (RHK/RLE)
**MEMORANDUM OPINION AND ORDER**

GMI Acquisition, Inc., d/b/a
Car/Truck City,

Defendant.

---

Thomas J. Lyons, Thomas Lyons & Associates, Saint Paul, Minnesota, and Thomas J. Lyons, Jr., Consumer Justice Center, P.A., Saint Paul, Minnesota, for Plaintiff.

Daniel J. Boivin and Konstandinos Nicklow, Meshbesher & Spence, Ltd., Minneapolis, Minnesota, for Defendant.

---

## Introduction

This action arises out of Plaintiff Nicholas Malchow's purchase of a used truck from Defendant GMI Acquisition, Inc., doing business in the Pine City, Minnesota, area as Car/Truck City. Malchow brought suit in federal court alleging that GMI violated the Truth in Lending Act ("TILA") by (1) failing to deliver the requisite disclosures to him in a form he could keep prior to him signing the documents for the transaction and (2) treating the disclosures in the retail installment sales contract as estimates without marking them as such. Malchow also complains that GMI violated Minnesota's Motor



OCT 01 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD OCT 01 2002
DEPUTY CLERK

Vehicle Retail Installment Sales Act ("MVRISA"), Minn. Stat. § 168.71(a)(1), by the manner in which it documented the transaction. Malchow further contends that GMI invaded his privacy when it caused employees of a repossession company to be sent to his father's home to locate and repossess the truck after Malchow stopped making payments to GMI.

Before the Court is GMI's Motion for a Judgment on the Pleadings or, Alternatively, for Summary Judgment. For the reasons set forth below, the Court will grant GMI's motion with respect to the TILA claim and will dismiss the pendant state law claims over which the Court has supplemental jurisdiction.

**Background**

On March 26, 2001, Malchow purchased a truck from GMI, agreeing to finance the purchase through the dealership. Malchow complains that the circumstances under which he signed the documents for the transaction were coercive; the sales agent for GMI held the documents to the table, preventing him from picking them up and reading them. Malchow further asserts that he did not actually receive copies of the vehicle purchase contract and retail installment contract until after he had signed them. In addition, although the sales documents indicated GMI's receipt of a $5,000 down payment that was not included in the purchase price being financed, Malchow complains that the documents failed to reflect his agreement with GMI to pay the $5,000 down payment to GMI in installments. After Malchow signed the financing documents, GMI assigned the

loan to Pine City State Bank.

Malchow asserts that the retail installment contract he signed also did not reflect his agreement with GMI regarding a service contract and credit insurance. Malchow claims that GMI told him that these products were necessary to obtain financing for the vehicle but that he could cancel them after thirty days. When he tried to cancel the service contract and credit insurance, however, GMI would not let him do so. Malchow alleges that GMI told him that the bank required him to keep the service contract and insurance. Malchow went to Pine City State Bank to try to cancel the products. The bank's agent told him that it would not include credit insurance and a service contract on a loan unless the borrower (i.e., Malchow) specifically requested them. Malchow contends that the bank instructed and advised him to stop making payments to GMI on the down payment.

After Malchow stopped paying installments to GMI on the down payment, GMI retained a collection agency, First National Repossessor, Inc. ("FNR"), to repossess the truck. Employees of FNR went to the home of Malchow's father. Presenting themselves as agents of the United States Census Bureau, FNR's employees began asking Malchow's father questions about his son. Malchow's father became concerned and threatened to call the sheriff, at which point the FNR employees admitted who they really worked for and why they were there. Among other things, FNR's employees told Malchow's father that Malchow was delinquent on his payments for the truck.

## Analysis

### I. Standard of Decision

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings may only be granted if the moving party clearly establishes that no material issue of fact remains to be resolved and the moving party is entitled to judgment as a matter of law. Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001). In determining whether material issues of fact exist, the court must accept all facts pled by the non-moving party as true and draw all reasonable inferences in favor of the non-moving party. Id.; Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(c).

On a motion for summary judgment, the court must view the evidence in the record, including any affidavits submitted in support of and in opposition to summary judgment, together with whatever inferences may be reasonably drawn from that evidence, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).

> If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

St. Jude Med., Inc. v. Lifecare Int'l., Inc., 250 F.3d 587, 595 (8th Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). GMI has attacked the legal sufficiency of all three causes of action asserted in Malchow's Amended Complaint. The Court begins with the TILA claim.

## II. The TILA Claim

GMI presents two arguments against Malchow's TILA claim. First, GMI asserts that Malchow fails to state an actionable TILA claim because there are no damages for the alleged violations. GMI points out that Malchow has alleged no actual injury arising from GMI's alleged violations and seeks no actual damages; Malchow has requested only statutory damages, as provided for in § 1640(a)(2)(A)(i) of the TILA. GMI argues that statutory damages are not available for Malchow's claim because the provisions he alleges have been violated are not those for which statutory damages can be awarded.

Second, GMI argues that its conduct toward Malchow complied with the TILA. GMI asserts that it satisfied the statutory disclosure requirements of § 1638(b), as construed in Vang v. Morrie's Minnetonka Ford, 2001 WL 1589614 (D. Minn. Dec. 11, 2001) (Frank, J.) and Peter v. Village Imports Co., 2001 WL 1640130 (D. Minn. Oct. 9, 2001) (Doty, J.), because it presented Malchow with the required terms of the transaction

before he signed the contract. GMI contends that, if Malchow had wished to, he could have taken the forms away and engaged in comparison shopping for credit terms. As for Malchow's allegation that GMI violated the TILA by treating the disclosures as "estimates" without marking them as such, GMI contends that this Court has already rejected the substance of Malchow's argument in another case. For the reasons set forth below, the Court concludes that GMI's argument regarding statutory damages is dispositive of the TILA claim.

Malchow concedes that he suffered no actual injury and incurred no actual damages as a result of GMI's alleged TILA violations; he acknowledges that he is seeking only the statutory damages described in § 1640(a)(2)(A)(i) for violations of the timing requirements set forth in 15 U.S.C. § 1638(b)(1). (Pl.'s Mem. Opp'n to Summ. J. at 20.) The civil liability provision of the TILA, § 1640(a), states in pertinent part as follows:

> *Except as otherwise provided in this section*, any creditor who fails to comply with any requirement imposed under [15 U.S.C. §§ 1631-1649], including any requirement under section 1635 of this title, or [15 U.S.C. §§ 1666 to 1666j or §§ 1667 to 1667f] with respect to any person is liable to such person in an amount equal to the sum of –
>
> > (1) any actual damage sustained by such person as a result of the failure; [and]
> >
> > (2)(A) (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, . . . .
> >
> > *****

> *. . . In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, . . . .*

15 U.S.C. § 1640(a) (emphasis added). Thus, the statutory damages authorized in subparagraph (2)(A)(i) are available for violations of any requirement of 15 U.S.C. §§ 1631-1649, "[e]xcept as otherwise provided in this section." See Brown v. Payday Check Advance, Inc., 202 F.3d 987, 990 (7th Cir.), cert. denied, 531 U.S. 820 (2000). Malchow argues that "the failure to deliver disclosures in the manner provided by § 1638(b)(1) must be considered a failure to disclose the required terms under § 1638(a)." (Pl.'s Mem. Opp'n to Summ. J. at 21.) Hence, GMI's failure to timely disclose the "amount financed," "finance charge," "annual percentage rate," "total of payments," and "number, amount and due dates of payments" before extending credit to Malchow constituted a failure to disclose those terms as required by § 1638(a), triggering GMI's liability for statutory damages.

The Court of Appeals for the Seventh Circuit has considered and rejected the argument Malchow makes here.

> Plaintiffs insist that information has been "disclosed" in compliance with § 1638 only if all of the TILA and all of Regulation Z have been followed. On this understanding, although the lenders informed the borrowers of correctly calculated finance charges and annual percentage rates, and made all other mandatory disclosures, they did not comply with the sections requiring these disclosures, because they did not make the disclosures in the form required by other parts of the statute and regulations. The lenders may

> have informed borrowers of the statutory items, plaintiffs insist, but they did not "disclose" these items. Thus, according to plaintiffs, any violation of §1632(a), §1638(a)(8), or §1638(b)(1) also violates §1638(a)(3) (which requires the lender to disclose the finance charge), §1638(a)(4) (which requires the lender to express the finance charge as an annual percentage rate), and so on. Because §1638(a)(3) and (a)(4) are on the list of violations eligible for statutory damages, plaintiffs say that they must prevail. Yet accepting this argument would destroy the point of §1640(a). *What sense would it make to omit §1632, §1638(a)(1), (a)(2) (in part), (a)(7), (a)(8), (a)(10), (a)(11), (a)(12), and all of §1638(b), (c), and (d) from the candidates for statutory damages if they came in through the back door on the theory that all formal shortcomings infect the disclosures of the items that are on the list?* Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret §1640(a).

Brown, 202 F.3d at 991 (emphasis added).[1] Congress structured § 1638 so that the requirements of *what* a creditor must disclose are separate and distinct from the requirements of *when and how* the creditor must make those disclosures.[2] The plain language of § 1640(a) provides that statutory damages are available "*only* for failing to

---

[1] Malchow urges the Court to follow the reasoning of, inter alia, Judges Enslen and Hillman of the United States District Court for the Western District of Michigan, who have disagreed with Judge Easterbrook's analysis in Brown. See Daenzer v. Wayland Ford, Inc., 193 F. Supp. 2d 1030 (W.D. Mich. 2002) (Enslen, J.); Lozada v. Dale Baker Oldsmobile, Inc., 145 F. Supp. 2d 878 (W.D. Mich. 2001) (Hillman, J.). The Court does not find their analyses persuasive and observes that, even within the Western District of Michigan, opinion is divided as to whether a violation of §1638(b) can give rise to a claim for statutory damages. See Kilbourn v. Candy Ford-Mercury, Inc., 209 F.R.D. 121, 125-28 (W.D. Mich. 2002) (Quist, J.) (analyzing the reasoning in Brown and Lozada and holding that statutory damages are not available for violations of the requirements of § 1638(b)).

[2] Indeed, Malchow acknowledges that "[p]ut simply, 15 U.S.C. § 1638(a) tells the lender *what* has to be disclosed, while 15 U.S.C. § 1638(b) tells the lender *how* to disclose it." (Pl.'s Mem. Opp'n to Summ. J. at 21 (emphasis added).)

comply with *the requirements of* ... paragraph (2) ... (3), (4), (5), (6), or (9) of section 1638(a)." 15 U.S.C. § 1640(a) (emphasis added). Had Congress intended to allow the recovery of statutory damages for violations of the timing requirements of subsection 1638(b)(1), it would have included that subsection in the sentence enumerating the provisions for which statutory damages are available.

Judge Easterbrook noted that Congress added the portion of § 1640(a) under consideration to the TILA "in 1980 to curtail damages awards for picky and inconsequential formal errors." Brown, 202 F.3d at 991 (citing the Truth in Lending Simplification and Reform Act, Pub. L. 96-221, 94 Stat. 132, 168 (1980)). He observed that "[i]t would hardly be appropriate to undo Congress' decision by reading matters of form into the substantive provisions for which statutory damages are authorized." Id. This Court finds Judge Easterbrook's reasoning persuasive. Applying that same analysis to the facts of this case, the Court concludes that statutory damages are not available for the TILA violations Malchow has alleged. Having failed to state a cause of action for which relief can be granted, the Court will dismiss the TILA claim with prejudice.

## III. Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(c), a district court may, under certain circumstances, decline to exercise supplemental jurisdiction over state law claims that are otherwise so related to the claim or claims in the action over which the court has original jurisdiction as to form part of the same case or controversy. 28 U.S.C. § 1367(c). The district

court's power to exercise jurisdiction under § 1367(a) is ordinarily determined on the pleadings; however, "the court's decision to exercise that jurisdiction 'is one that remains open throughout the litigation.'" Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1287 (8th Cir. 1998) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 727, 86 S. Ct. 1130, 1139-40 (1966)). In deciding whether a federal court should exercise supplemental jurisdiction after all federal claims have been resolved, the court must look to the factors set forth in § 1367(c), including whether the pendant claims raise novel or complex issues of state law, and whether they substantially predominate over the federal question claim that has been resolved. See Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1037 (8th Cir. 1999).

After the district court dismisses claims over which it has original jurisdiction, it is within the Court's discretion to dismiss the remaining state law claims. See 28 U.S.C. § 1367(c)(3). "[W]hen state and federal claims are joined and all federal claims are dismissed . . . the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law . . . as a matter of comity." American Civil Liberties Union v. City of Florissant, 186 F.3d 1095, 1098-99 (8th Cir. 1999). In this case, Malchow's claim for "intrusion upon seclusion" raises novel questions of state law with respect to a common law cause of action that is evolving and on which Minnesota's appellate courts have provided little guidance. In addition, Malchow's state statutory MVRISA claim involves issues distinct from those presented by his TILA claim. In light

of the foregoing, the Court will decline to exercise supplemental jurisdiction over these claims and will dismiss them without prejudice.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that Defendant GMI Acquisition, Inc.'s Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment (Doc. No. 24) is **GRANTED** as to Count II of the Amended Complaint, alleging violations of the Truth in Lending Act. That claim is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, as to Counts I and III of the Amended Complaint, the Court hereby declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, those claims are hereby **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 1, 2002

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*